225 So.2d 855

**In the Matter of Angelo M. Paradiso.**

**Angelo M. PARADISO**

v.

**BOARD OF COMMISSIONERS OF
ALABAMA STATE BAR.**

**3 Div. 404.**

Supreme Court of Alabama.

July 10, 1969.

William H. Morrow, Jr., Montgomery, for Alabama State Bar, respondent.

Hopper & Hornsby, Huntsville, for petitioner.

The pertinent parts of these rules are as follows:

"No person heretofore or hereafter admitted to practice law in Alabama, shall

"27. Misappropriate the funds of his client, either by failing to pay over money collected by him for his client, or by appropriating to his own use funds entrusted to his keeping, provided the circumstances attending the transaction are such as to satisfy the Board that the attorney acted in bad faith or with fraudulent purpose.

"36. No person licensed to practice law in the courts of the State of Alabama shall be guilty of any conduct unbecoming an attorney at law." 239 Ala. XXIII.

The complaint consisted of three charges, but the Board found the respondent "not guilty" of Charge Two (Rule 33, § A, deceit and wilful misconduct).

Since there is only one material conflict in the evidence, we state the essential facts in more or less chronological form, and will note the conflict when it is reached.

In 1958, Hutch Shinn, a Negro soldier, contacted a law firm in Birmingham to defend him and his wife in a suit to quiet title filed in the Circuit Court of Jefferson County. The firm filed a demurrer and referred Shinn to the respondent, who, being paid a retainer of $50.00 by Shinn began representing him. Shinn did not communicate with respondent in 1958, 1959, 1960 or 1961.

PER CURIAM.

This is a petition for review of the decision of the Board of Commissioners of the Alabama State Bar. The Board found that respondent was guilty of violating Rules 27, § A, and 36, § A, and rendered a judgment suspending him from the practice of law for six months without automatic reinstatement at the end of the six months' suspension, but with the right to apply for reinstatement under Rule C of the Rules of the Supreme Court of Alabama Governing the Conduct of Attorneys in Alabama.

In 1959, demurrers were sustained to the bill and, in 1960, the bill was amended dismissing Shinn's wife Annie as a party respondent. The respondent here filed a demurrer, it was overruled and an answer was filed. In 1962, a letter mailed to Shinn was returned "unable to locate." In 1965, Mrs. Shinn called and stated her ad-

dress was Ft. Leonard Wood, Missouri. Later in 1965, respondent withdrew from the case, notifying both the court and Shinn. Mrs. Shinn called him and requested him to remain in the case and respondent consented. In November, 1965, an agreement was reached whereby Shinn would receive $1,000.00 in payment for a deed to his interest in the property. A deed was sent to Shinn and was returned improperly executed. The deed was returned to Mrs. Shinn with instructions to send it to Shinn for signature, who, according to her, was stationed in Germany. In January, 1966, Shinn wrote that he was back at Ft. Leonard Wood but that he had lost the deed. Finally, in February, 1966, a proper deed from Shinn was received and the case was closed by the delivery of the deed and the delivery of a check for $1,-000.00 to respondent from the attorneys on the opposite side.

We come now to the events which caused the charges to be brought against the respondent. He states that he mailed a check to Shinn in full settlement. The check was described as No. 321, drawn on the American National Bank of Huntsville, Alabama, dated May 23, 1966, payable to Hutch Shinn and Annie Shinn in the amount of $675.00. Both Shinn and his wife testified they did not receive such a check and it was never presented to the bank for payment.

The ledger sheet of respondent's account at the bank on which the check was drawn on May 23, 1966, shows that it did not contain a balance sufficient to cover the check on any day during that month. Whether this check was actually sent was the only material conflict in the evidence.

In June, 1966, Shinn wrote the Grievance Committee of the Bar Association that the case was completed in February but he had not received his money. The chairman of the committee wrote respondent for an explanation. Respondent answered that he had sent the money to Shinn. On July 12, 1966, the chairman wrote respondent asking him to send a copy of the letter of transmittal to Shinn and a copy of the canceled check. The respondent did not reply and on October 11, 1966, the new chairman again asked respondent to furnish him with copies of the letter of transmittal and the check so the matter could be closed prior to the meeting of the committee on October 28, 1966. Respondent did not answer and he was notified on November 2, 1966, that he was requested to appear before the committee on November 18. Prior to the meeting, respondent called the chairman and advised him that he had forwarded a cashier's check to Shinn and the chairman told him that his attendance at the meeting would not be necessary. On January 13, 1967, the chairman wrote Shinn and asked if he had received the check. Shinn wrote back that he had not. Respondent was notified of this development and requested to appear before and explain the matter to the committee at their meeting on February 17, 1967. He did not appear and charges were filed against respondent on April 27, 1967. A final hearing for the taking of testimony was held on October 24, 1968, at which respondent was present and testified.

On October 24, 1968, and prior to the hearing set before the Board of Commissioners on November 8, 1968, respondent tendered to counsel for the Grievance Committee a cashier's check for $675.00 payable to Hutch and Annie Shinn. The check was received and transmitted.

At these hearings on October 24 and November 8, 1968, respondent represented himself. After argument and the finding of guilty on two of the three charges, he secured an attorney to represent him for the review in this court.

Assignments of error 1 and 3 charge that the Board erred in finding petitioner guilty of Charge One and Assignments 2 and 4 charge the same with respect to Charge Three. Assignments 5 and 6

charge that the Board erred in considering the depositions of Hutch and Annie Shinn. These are the argued assignments.

Petitioner contends in the argument as to all assignments of error that the Board erred in admitting into evidence the depositions of the Shinns. We dispose of that contention in our disposition of assignments of error 5 and 6.

The record shows the following:

"It is stipulated between the Grievance Committee and the Respondent that we waive any objections as to the notice of taking of depositions that are to be offered into evidence in these proceedings, and on behalf of the Grievance Committee I offer in evidence as exhibit, as Grievance Committee's Exhibit No. 16 the deposition of Hutch Shinn.

"(Continuing) And offer in evidence as Exhibit 17 the deposition of Annie Shinn."

Later, in presenting his own testimony, petitioner read certain statements from Annie Shinn's deposition to support his contention that he mailed the check on May 23, 1966.

█ Depositions are admissible in disciplinary proceedings against an attorney. In re Sullivan, 283 Ala. 514, 219 So.2d 346; Ex parte Messer, 228 Ala. 16, 152 So. 244; Tit. 46, § 25, Tit. 7, §§ 474(1)–474 (18), Code 1940.

█ It is clear that petitioner waived by stipulation any objections as to notice of taking the depositions, and he cannot now object that the proper notice was not given him of the time and place of the taking of the depositions. This is the ground on which he attacks their admissibility. Assignments of error 5 and 6 are without merit.

█ As to petitioner's guilt on Charges One and Three, we think the statement of the facts adequately supports the suspension imposed by the Board of Commissioners in this proceeding. Petitioner attempts to excuse his conduct by pointing up the fact that he sometimes did not know where the Shinns were, their dilatory tactics in getting in touch with him and their mistakes and delay in handling the deeds. But this happened before the settlement of the case and the payment of the $1,000.00 in settlement in February, 1966. The fact remains that he withheld his client's money from then until October 24, 1968, some two and one-half years, despite telephone calls from his client and letters from the Grievance Committee of the State Bar Association, and the client's money was not produced until after charges were filed against him. This disposes of assignments 1, 2, 3 and 4.

In the case of In re Stuart, 257 Ala. 184, 57 So.2d 874, the charges included violations of Rules 27 and 36, as here. This court said that in one case the respondent "tendered this money to his client on the taking of the testimony before the commissioner, nearly two years after collecting it. In the other cases it was proven petitioner withheld monies entrusted to him by his clients for certain purposes until he yielded to pressure from the respective Grievance Committees to pay the same over for the purposes for which he had received them. The petitioner, to excuse his conduct, claims continued illness and other alleviating circumstances, but the Bar Commission was not impressed, nor are we convinced that the Board's decision was so in error as to justify a reversal." The court also said:

"In considering the question, we are not dealing with legal niceties, but the measure of good faith to be accorded by an attorney to his client and whether he has properly demeaned himself toward those high standards and trusts which inhere in his calling. Decision is not to be gauged by technical accuracies. The standard of ethics required of him is of

a much higher character than is required in customary business dealings, where the parties deal at arm's length. In re Gaines, 251 Ala. 329, 37 So.2d 273.

"And whether petitioner's misconduct was *animo felonico* with respect to the money entrusted to him or was just a natural, habitual deficiency in his requisite regard for and devotion to the interests of his clients is of no moment in considering his guilt *vel non* in violating our rules of conduct; the end result was the same. He acted in bad faith in the circumstances shown in failing to discharge his trust with regard to the monies entrusted to him and thereby subjected himself to disciplinary action for a violation of the rules. See Cases, 69 A.L. R. 707.

\* \* \* \* \* \*

"A fair inference is that petitioner did not fully appreciate the duty of an attorney to account to his client, but this duty is an absolute one; and to make a full, detailed and accurate account and to do it promptly. \* \* \*"

Petitioner argues that the instant case is governed by Ex parte Acton, 283 Ala. 121, 214 So.2d 685. We cannot agree. In that case, the defense and justification for retaining the money collected was that the client agreed that the money was the property of the attorney and was payment for past services. Here, there has never been any claim that any part of the $1,000.00, except the fee, belonged to the petitioner and it was conceded that the $675.00 was at all times after February, 1966, the property of and due the client.

We find nothing in the record which authorizes us to override the decision of the Board of Commissioners.

Affirmed.

LIVINGSTON, C. J., and LAWSON, SIMPSON, MERRILL, HARWOOD and BLOODWORTH, JJ., concur.